1   Thomas Saenz (Cal. Bar No. 159430)
2   Ernest I. Herrera (Cal. Bar No. 335032)
    Eduardo Casas (Cal. Bar No. 346859)
3   MEXICAN AMERICAN LEGAL DEFENSE
    AND EDUCATIONAL FUND
4   634 S. Spring Street, 11th Floor
    Los Angeles, CA 90014
5   Facsimile: (213) 629-0266
    Email: tsaenz@maldef.org
6   eherrera@maldef.org
    ecasas@maldef.org
7
    Attorneys for Plaintiff
8   Emma Morquecho

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11  EMMA MORQUECHO,                    Case No.:

12                        Plaintiff,   **COMPLAINT FOR
                                       DECLARATORY AND
13          vs.                        INJUNCTIVE RELIEF AND
                                       DAMAGES**
14  WESTCLIFF UNIVERSITY,
    ANTHONY LEE, as PRESIDENT          1. Title IX
15  and DIRECTOR of WESTCLIFF          2. the California Unruh Civil Rights Act
    UNIVERSITY, CALIFORNIA                ("Unruh Act")
16  PACIFIC CONFERENCE, and            3. California Government Code § 11135
    NATIONAL ASSOCIATION OF            4. California Government Code § 66270,
17  INTERCOLLEGIATE                       *et seq.*
    ATHLETES,
18                                     **DEMAND FOR JURY TRIAL**
                         Defendants.
19

20

21          Plaintiff Emma Morquecho alleges as follows upon information and belief:

22                              **INTRODUCTION**

23  1.   Plaintiff Emma Morquecho is qualified as a student-athlete in every respect.

24       Plaintiff Morquecho wants to play women's volleyball and earn a scholarship to

25       pay for an advanced degree in education.  However, Westcliff University, the

26

27       California Pacific Conference, and the National Association of Intercollegiate

28

Athletics ("NAIA") adopted and enforced a new policy that denies Plaintiff Morquecho eligibility and revoked a scholarship offer to play women's volleyball solely because she is a transgender woman.

2.   Despite being recruited by Westcliff University coaching staff and offering her a scholarship initially, the institution and California Pacific Conference revoked her eligibility to play women's volleyball.  Then, the NAIA changed its policy in 2024 to expressly ban transgender women from playing women's sports.

3.   Defendants' actions and/or omissions violated Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq* ("Title IX"); the California Unruh Civil Rights Act ("Unruh Act"); California Government Code § 11135; and the California Equity in Higher Education Act, California Government Code § 66270, *et seq*. Defendants' violations have inflicted significant harm on Plaintiff, which extends beyond the denial of educational opportunities, causing loss of costs related to moving, educational costs, and emotional distress.

## PARTIES

4.   Plaintiff Emma Morquecho is a resident of Phoenix, Arizona.  She is a 33-year-old Latina and competitive volleyball player who still seeks graduate educational opportunities.

5.   Plaintiff Morquecho resided in the County of Orange, California, and County of Los Angeles, California, when the events in this complaint transpired.  She currently resides in Phoenix, Arizona.

6. Defendant Westcliff University is a private, for-profit educational institution in Irvine, California, in the County of Orange. Westcliff University is incorporated as a general corporation under California law in Irvine, California. Defendant Westcliff University does not have a religious affiliation.

7. Students at Defendant Westcliff University receive loans and aid from the United States government and from the State of California, including but not limited to Pell Grants, federal loans, and Cal Grant funding. Westcliff students use this federal and state funding to pay for tuition and educational costs at Westcliff University.

8. Defendant Anthony Lee, Ed.D., is Chief Executive Officer, President, and Director of Westcliff University. He has been President of the University since 2008. Dr. Lee is responsible for the operations of Westcliff University and listed as Director in its California incorporation.

9. Defendant National Association of Intercollegiate Athletics ("NAIA") is an organization, the members of which are 250 public and private accredited institutions of higher education in the United States of America. In its constitution, the NAIA says that it is "created by the representatives of colleges and universities to promote the development of athletics as an integral part of the educational offerings of member institutions by means of democratic participation at conference, independent and national levels."

10. Defendant NAIA's membership includes Westcliff University.

11. Defendant NAIA adopts standards for the sports eligibility of any collegiate athlete representing a member institution who competes in any manner against competitors not directly identified with that institution in any sport recognized by the NAIA.

12. Member institutions of NAIA receive federal and State of California funding.

13. Defendant California Pacific Conference ("Cal Pac") is a regional conference comprised of NAIA member institutions in California, Kansas, and New Mexico. Cal Pac determines the athletic eligibility of athletes in institutions that are NAIA and Cal Pac members.

14. Defendant Cal Pac's membership includes Westcliff University as both a current and all-time member.

15. Member institutions of Cal Pac receive federal and State of California funding.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction under 28 U.S.C. § 1331 because this case involves federal causes of action under Title IX. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because they are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

17. Venue is proper in this district under 28 U.S.C. § 1391(b) because the claims alleged arose from events or omissions occurring in the County of Orange, which is within the Central District of California.

## FACTUAL ALLEGATIONS

### A. Westcliff University Recruited Emma Morquecho for Women's Volleyball and Admitted her as a Student-Athlete.

18. Emma Morquecho began playing volleyball in her twenties in Phoenix, Arizona, after immigrating to the United States from Mexico. After meeting a volleyball coach at a Christian church there who encouraged her to apply for scholarships within the NAIA, she made it her goal to do so.

19. Plaintiff Morquecho also played in Phoenix in various associations like the Association of Volleyball Professionals ("AVP"). She has also competed in the Los Angeles Volleyball Organization and the North American Gay Volleyball Association.

20. Plaintiff Morquecho submitted an interest form for prospective student-athletes in May of 2022 to Westcliff University when she was thirty years of age. Plaintiff Morquecho included on the interest form that she was a transgender woman.

21. Andrew Cole, the head coach of the women's volleyball program at Westcliff University, called Plaintiff Morquecho on the phone around Thanksgiving of 2022.

22. During the 2022 phone call, Cole expressed interest in recruiting Plaintiff Morquecho to play on the Westcliff women's volleyball team, and Cole and Plaintiff Morquecho kept in touch.

23. Cole requested film or video of Plaintiff Morquecho playing volleyball. Plaintiff

Morquecho provided those videos.

24. At the encouragement of Cole, Plaintiff Morquecho applied for admission to Westcliff University in order to play on the women's volleyball team.

25. On July 12, 2023, Plaintiff Morquecho submitted her letter of intent to participate in women's volleyball to the Westcliff University Athletics Department. Coach Cole, the Dean of Athletics, the Compliance official, and the Associate Athletic Director all signed the letter of intent on July 12, 2023.

26. On July 14, 2023, Westcliff University offered Emma Morquecho an athletic scholarship for women's volleyball of $6,673.000 for the 2023-2024 school year. The academic year costs without any financial aid would have totaled $10,340.00.

27. On July 15, 2023, Plaintiff Morquecho moved from Phoenix, Arizona, to Anaheim, Orange County, California, in order to attend Westcliff University and play as a student-athlete on the Westcliff University women's volleyball team. She also quit her job in Arizona in order to pursue the opportunity that Westcliff University presented to her.

28. On July 21, 2023, Plaintiff Morquecho underwent a standard physical examination required for all student-athletes. The examining physician cleared Plaintiff Morquecho for athletic competition on a Westcliff University form, which was submitted to the school.

29. In July of 2023, Plaintiff Morquecho paid various administrative fees as part of

applying for admission to Westcliff University, such as an English proficiency fee, a fee for evaluations, and fees for transfer of her Bachelor's degree institution transcripts to Westcliff. She also took required placement examinations.

30. On July 25, 2023, Westcliff University conditionally admitted Plaintiff Morquecho as a student in the College of Education for the Master of Arts in Teaching English to Speakers of Other Languages degree program as a regular degreed candidate starting in the 2023 fall semester.

31. Westcliff conditioned admission on Plaintiff Morquecho's completion of an enrollment agreement and registration for classes for the fall 2023 semester.

**B. Westcliff University, Cal Pac, and NAIA Denied Emma Morquecho Student-Athlete Eligibility, Leading to Revocation of a Scholarship Offer.**

32. On July 28, 2023, Jodi Consten, the Associate Dean of the College of Education of Westcliff University, and the school's Dean of Athletics Shawn Harris sent a letter to Emma Morquecho stating that Westcliff was awaiting an eligibility decision from Cal Pac due to Plaintiff Morquecho being transgender. The letter stated: "we support your ability to participate in our athletic programs while pursuing your academic degree." However, the letter then stated:

> [O]ur athletic programs are regulated by the California Pacific Conference (CAL PAC) and we must comply with its policies. CAL PAC has acceptance or veto power on transgender participation and has not decided the issue, although there has been discussion. Until CAL PAC decides, Westcliff must adhere to the status quo, which prevents your participation.

The Deans' July 28, 2023, letter to Plaintiff Morquecho further claimed that Westcliff "appealed to CAL PAC to address this issue urgently and accept full participation of transgender student-athletes, but the decision lies with the Conference."

33. Plaintiff Morquecho sent an email in August to Don Ott, Commissioner of Cal Pac to ask about her eligibility. Dr. Ott responded, "[t]he policy discussion is being held by our presidents, not me […] We have set meetings for [the presidents] and they will determine our path forward."

34. On August 10, 2023, Andrew Cole sent an e-mail to Plaintiff Morquecho saying, "[a]s a confirmation, this email is to confirm your ineligibility status for the Fall of 2023-24." Mr. Cole further wrote, "The scholarship money is therefore canceled for this Fall."

35. Plaintiff Morquecho sent multiple e-mails and made multiple phone calls to Cal Pac and NAIA during the fall of 2023 and spring of 2024 in order to inquire into her eligibility to compete in women's volleyball at Westcliff University. She received no definitive answer from either Cal Pac or NAIA.

36. On October 5, 2023, NAIA Manager of International Eligibility Sebastian Dancler sent an email to Plaintiff Morquecho saying that her NAIA student-athlete account was "made inactive on October 5th" because the NAIA had not received an official response from multiple events or from Westcliff University "to allow you to speak on behalf of these events."

37. Upon information and belief, Westcliff University, Cal Pac, and NAIA jointly reached the decision to deny Plaintiff Morquecho eligibility to play women's volleyball for Westcliff University and therefore jointly denied Plaintiff Morquecho an athletic scholarship because she is a transgender woman.

## C. NAIA Adopts and Westcliff University and Cal Pac Enforce Policy Discriminating Against Transgender Women Athletes.

38. Before 2024, NAIA did not have a policy addressing the eligibility of transgender student-athletes specifically.

39. On April 8, 2024, the NAIA Council of Presidents approved a new "Transgender Participation Policy" regarding the eligibility of transgender athletes. The policy states that "[a]ll eligible NAIA student-athletes may participate in NAIA-sponsored male sports." It then requires that "[o]nly NAIA student-athletes whose biological sex* is female may participate in NAIA-sponsored female sports." The policy defines "biological sex" as follows:

> For the sake of this policy, biological sex is defined by distinguishing characteristics and can be supported by birth certificate or signed affidavit. While rare, there have been cases where the sex assigned at birth does not match the biological sex, which led to the use of biological sex in this document.

40. NAIA's Transgender Participation Policy does not allow students whose "biological sex[] is female," as the NAIA so defines the term, to participate in women's sports if they have begun masculinizing hormone therapy. The policy

states that a student who has begun such "masculinizing hormone therapy" may, at the discretion of the institution, only participate in activities internal to the institution such as workouts and practices.  The Transgender Participation Policy only exempts competitive cheer and competitive dance from these rules for transgender athletes.

41. NAIA clarifies in the Transgender Participation Policy that the association "places primary responsibility for adherence to all rules and policies on the institution."

42. In a press statement, the NAIA said that "[e]ach NAIA sport includes some combination of strength, speed and stamina, providing competitive advantages for male student-athletes."  The NAIA therefore denies that transgender women are women and offensively labels them as "male."

43. Neither Westcliff University nor Cal Pac ever updated Plaintiff Morquecho to notify her that they would grant her eligibility in contravention of the NAIA policy.  Therefore, upon information and belief, Westcliff University and Cal Pac adopt and enforce the NAIA Transgender Participation Policy.

44. NAIA's policy is out of step with the International Olympic Committee ("IOC"), which maintain policies that allow women and girls who are transgender to participate on women's teams.

45. NAIA's policy is also out of step with science and based in gender stereotypes.  In a research survey, the National Institute of Health found that there is not a

consistent finding of an athletic advantage for transgender women over cisgender women. Furthermore, research that the IOC commissioned found in 2024 that transgender women are not cisgender men physiologically and cautioned against the presumption of immutable advantages for transgender women athletes in women's sports.

46. However, the NAIA's policy change preceded the change by the National Collegiate Athletic Association ("NCAA"), which permitted transgender women to compete with women's sports teams until this year. The NCAA changed its policy in February of 2025, capitulating to an executive order by President Donald Trump that is based in gender stereotypes and explicitly seeks to exclude transgender women from competing with women's teams in sports.

**D. NAIA, Westcliff University, and Cal Pac Deny Plaintiff Morquecho the Opportunity to Advance her Education and Career as a Student-Athlete.**

47. The NAIA Transgender Participation Policy adopted by the conference and enforced by Cal Pac and Westcliff University denies Plaintiff Emma Morquecho the opportunity to earn a scholarship as a student-athlete playing women's volleyball and denies her the ability to attend the Masters in TESOL or any other relevant graduate program.

48. Plaintiff Morquecho works full-time, formerly at a non-profit, and currently in education at a K-8 school in Arizona. Plaintiff Morquecho could not afford a

Masters in TESOL program at a college in the United States out of her own pocket in 2023, and cannot afford the tuition and costs of such a program now. If she had the scholarship in 2023 as was initially offered for playing volleyball at Westcliff, Plaintiff Morquecho would have completed the enrollment agreement and registered for classes for the fall 2023 semester.

49. Plaintiff Morquecho completed a TESOL degree program remotely at a university located in Mexico, but she would still like to pursue Westcliff University's Doctorate in Education Leadership in order to advance her education and career.

50. Plaintiff Morquecho feels that she would have no sense of belonging in or acceptance by a men's volleyball or athletic team. Being forced to compete on a men's athletic team to earn a scholarship would make Plaintiff Morquecho feel like less of a human and as though she is not where she is supposed to be.

51. As a result of her exclusion from Westcliff's women's volleyball program, Plaintiff Morquecho has experienced emotional distress in the form of anxiety and other mental health problems. She has received and requires therapy for treatment for this distress caused by her exclusion.

## FIRST CAUSE OF ACTION

### Violation of Title IX
### 20 U.S.C. § 1681, *et seq.*
### Plaintiff Morquecho against all Defendants

52. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth here.

53. Plaintiff Morquecho brings this claim under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq* ("Title IX").

54. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

55. Title IX applies to athletic programs as well as other university programs. The regulations implementing Title IX do not require separation of sports teams by sex. Furthermore, the regulations require effective accommodation of the interests and abilities of members of the different sexes and equal treatment, or equivalence in the opportunities and benefits provided to men and women athletes.

56. Westcliff University receives federal funding through its students who pay tuition and fees with federal financial aid and loans. NAIA and Cal Pac member institutions pay for NAIA and Cal Pac programs with funds derived from federal financial aid and loans.

57. By barring Plaintiff Morquecho from women's volleyball because she is a transgender women, Defendants NAIA and Cal Pac deny her effective

accommodation and equal treatment in athletics programs.

58. The NAIA's Transgender Participation Policy, as implemented by Defendants Westcliff University and Cal Pac, define "sex" for women as being a "biological female" even though Title IX and its regulations do not define sex in this manner.

59. By enforcing the NAIA and Cal Pac ban on transgender women in women's athletics and by denying Plaintiff Morquecho eligibility and an athletic scholarship because she is a transgender woman, Defendant Westcliff University denies her effective accommodation and equal treatment in athletic programs.

60. By barring Plaintiff Morquecho from women's sports on the basis of her being a transgender woman and by defining her as not a "biological female," Defendants NAIA, Cal Pac, and Westcliff University deny Plaintiff Morquecho the benefits of educational programs and activities "on the basis of" her sex in violation of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

### SECOND CAUSE OF ACTION

**Violation of the Unruh Civil Rights Act**
**(California Civil Code §§ 51, *et seq*.)**
**Plaintiff Morquecho against all Defendants**

61. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth here.

62. Plaintiff Morquecho seeks admission to a university in California and resided in California at the time of the discriminatory incidents.

63. Defendants Westcliff University, Cal Pac, and NAIA are private businesses and conduct business within the jurisdiction of the State of California and, therefore, are obligated to comply with the provisions of the Unruh Act, California Civil Code §§ 51, *et seq.* Defendant Westcliff University's main campus and place of incorporation are in Irvine, California, and Cal Pac's headquarters are in Oakland, California.

64. Plaintiff Morquecho is entitled to full and equal accommodations, facilities, privileges, or services in all business establishments of every kind whatsoever no matter her sex. Under the Unruh Act, sex includes, but is not limited to, a person's gender. Under the Unruh Act, gender means sex, including a person's gender identity and gender expression. Gender expression under the Unruh Act means a person's gender-related appearances and behavior, whether or not such appearances and behavior are stereotypically associated with the person's assigned sex at birth.

65. Defendants Westcliff University, Cal Pac, and NAIA violate the Unruh Act by denying Plaintiff Morquecho access to and equal treatment in academic and educational programs at Westcliff and NAIA competitive sports free of discriminatory conditions imposed on the basis of her sex.

66. Under Section 52(a) of the Unruh Act, Plaintiff Morquecho is entitled to actual damages suffered, statutory damages of up to three times the amount of actual damages suffered per violation, but no less than $20,000, and attorneys' fees.

67. Under Section 52(c)(3), Plaintiff Morquecho requests that this Court issue a permanent injunction ordering Defendants to alter their policies and practices to prevent future discrimination on the basis of Plaintiff Morquecho's and other student-athletes' sex and allow transgender women to compete in women's volleyball, to prevent further violations of the Unruh Act.

### THIRD CAUSE OF ACTION

**Violation of California Government Code § 11135**
**Plaintiff Morquecho against Westcliff University**

68. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth here.

69. California Government Code § 11135 prohibits denial on the basis of sex of full and equal access to the benefits of any program or activity that received financial assistance from the State of California.

70. Defendant Westcliff University denied Plaintiff Emma Morquecho an athletic scholarship and eligibility to play women's volleyball for Westcliff because she is a transgender woman and therefore, on the basis of her sex.

71. Under California Government Code § 11135, "sex" is defined at Cal. Gov't Code § 12926(r)(2) as follows: "'Sex' also includes, but is not limited to, a person's gender[…] 'Gender' means sex, and includes a person's gender identity and gender expression."

72. Defendant Westcliff University receives financial assistance from the State of

California including, but not limited to, in the form of Cal Grant funding administered by the California Student Aid Commission.

73. Defendant Westcliff University violates California Government Code § 11135.

74. California law permits Plaintiff Morquecho to enforce California Government Code § 11135 by a civil action that seeks equitable relief. *See* Cal. Gov't Code § 11139.

75. Plaintiff Morquecho requests that this Court issue a permanent injunction ordering Defendant Westcliff University to alter its policies and practices to prevent future discrimination on the basis of sex and allow transgender women to compete in women's volleyball.

### FOUTH CAUSE OF ACTION

**Violation of the Equity in Higher Education Act**
**(California Government Code § 66270, *et seq*.)**
**Plaintiff Morquecho against Westcliff University**

76. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth here.

77. Defendant Westcliff University denied Plaintiff Emma Morquecho an athletic scholarship and eligibility to play women's volleyball for Westcliff because she is a transgender woman and therefore, on the basis of her sex. Defendant Westcliff University violates the Higher Education Act, California Government Code § 66270, *et seq*, in its policy and exclusion of Plaintiff Morquecho from

women's volleyball.

78. Defendant Westcliff University receives financial assistance from the State of California including, but not limited to, in the form of Cal Grant funding administered by the California Student Aid Commission.

79. Defendant Westcliff University is not controlled by a religious organization, and the Equity in Higher Education Act is therefore not inconsistent with any controlling religious organization as to Defendant.

80. Plaintiff Morquecho may enforce the Equity in Higher Education Act through a civil action. *See* Cal. Educ. Code § 66292.4.

81. Plaintiff Morquecho requests that this Court issue a permanent injunction under the Equity in Higher Education Act ordering Defendant to alter its policies and practices to prevent future discrimination on the basis of sex and allow transgender women to compete in women's volleyball.

## JURY DEMAND

82. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Emma Morquecho respectfully requests the following relief:

1. Declaratory judgment that Defendants' policies and practices set forth here are

unlawful and violate

    a. Title IX;

    b. The Unruh Civil Rights Act;

    c. California Government Code § 11135; and

    d. The California Equity in Higher Education Act;

2. Preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies and practices set forth here and described in all preceding paragraphs;

3. General damages, including compensatory damages;

4. Costs incurred, including reasonable attorneys' fees and costs to the extent allowable by law, including under Title IX and 42 U.S.C. § 1988;

5. Pre-judgment and post-judgment interest, as provided by law;

6. Punitive damages according to proof; and

7. Such other and further relief as the Court may deem just and proper.


Dated: August 8, 2025             Respectfully submitted,



                              */s/* Ernest I. Herrera
                              Thomas Saenz
                              Ernest I. Herrera
                              Eduardo Casas
                              MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
                              634 South Spring Street, 11th floor

1    Los Angeles, CA 90014
     Facsimile: (213) 629-0266
     Email: tsaenz@maldef.org
2           eherrera@maldef.org
            ecasas@maldef.org
3

4    *Attorneys for Plaintif*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF AND DAMAGES                          20